# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **E.W. and M.W.**

**No. 18-0910** (Cabell County 16-JA-242 and 18-JA-6)

**FILED**

**March 15, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother M.W., by counsel Richard L. Vital, appeals the Circuit Court of Cabell County's September 14, 2018, order terminating her parental rights to E.W. and M.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel James Wegman, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Cathy L. Greiner, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding there was no reasonable likelihood that the conditions of neglect would improve in the near future, in finding that termination was necessary for the welfare of the children, and in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2016, the DHHR filed a petition alleging that petitioner's pervasive alcohol and substance abuse negatively affected her ability to parent. According to the DHHR, M.W. was in the custody of his maternal grandmother, R.H., pursuant to a legal guardianship entered in 2011. However, petitioner exercised custody of E.W. According to the parties, petitioner stipulated to the allegations of abuse and neglect and was granted a post-adjudicatory improvement period.[2]

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The record on appeal contains only the petition, the docket sheet, and the transcript of the August of 2018 dispositional hearing.

During this improvement period, petitioner participated in and completed an inpatient substance abuse treatment program and was granted unsupervised visitation with E.W. early in 2017. The DHHR initiated a trial reunification with E.W. in May of 2017. However, the DHHR discovered that petitioner entered into a relationship with D.P., who had prior criminal charges of accessory to murder and child abuse. According to the parties, petitioner agreed during a multidisciplinary team ("MDT") meeting that she would not continue her relationship with D.P. or allow him around E.W. Additionally, the circuit court ordered petitioner not to allow D.P. to have contact with the child. However, D.P. was later discovered at petitioner's home multiple times and the child was removed from petitioner's care. Petitioner later admitted she was pregnant and that D.P. was the father.[3]

In December of 2017, the circuit court admonished petitioner for continuing to allow the child to be exposed to D.P. and found she had violated a previous court order and the recommendations of the MDT. However, the circuit court allowed petitioner to continue the improvement period and ordered that the DHHR resume supervised visitation.

The circuit court held dispositional hearings in July of 2018 and August of 2018. The DHHR presented testimony that petitioner acknowledged that she could be in a relationship, but that her significant other would need to participate in services. The evidence also showed that petitioner was dishonest with service providers regarding her relationship with D.P., which resulted in the removal of E.W. from her care. A case worker testified that he performed multiple unannounced visits at petitioner's home. During one of the visits, petitioner denied that D.P. had been in her home until confronted with a photograph taken earlier in the day that clearly showed D.P. there. Although the DHHR workers acknowledged petitioner's progress in remedying her substance abuse, they agreed that petitioner continued to exercise poor judgment by allowing D.P. to have contact with E.W. Additionally, the DHHR presented evidence concerning ongoing proceedings in Ohio that involved petitioner's newborn and D.P.'s physical abuse of that child. Petitioner admitted that authorities in Ohio removed the newborn from her home following those events.

The DHHR further introduced evidence that petitioner's participation in visitation and services diminished in 2018. Specifically, after E.W. was removed from petitioner's custody, petitioner missed a number of visitations with her in December of 2017 and January of 2018. Additionally, petitioner ceased all participation in her parenting classes and supervised visitation after a hearing in May of 2018. When questioned regarding her lack of participation, petitioner explained that she felt she would lose custody of her children regardless of her participation. Finally, petitioner's neighbor testified that she regularly babysat E.W. and that she witnessed a strong bond between petitioner and the child.

---

[3]Petitioner's parental rights to this child are not at issue in this appeal. According to the parties, authorities in Ohio removed this child from the parents upon allegations that D.P. shook the child.

2

Ultimately, the circuit court found that petitioner failed to cooperate with the DHHR and violated the circuit court's order not to have contact with D.P. Accordingly, the circuit court found that there was no reason to believe that the conditions of neglect would improve in the near future and that termination of petitioner's parental rights was in the best interests of the children. Therefore, the circuit court terminated petitioner's parental rights by its September 14, 2018, order. Petitioner now appeals that order.[4]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating her parental rights. Petitioner asserts that the circuit court erred in basing the order to terminate parental rights on petitioner's failure to abide by visitation requirements and her contact with D.P. Petitioner further avers that the circuit court clearly erred in finding that there was no reasonable likelihood that the conditions of neglect could be remedied in the near future and that termination was necessary for the welfare of the children. We disagree and find petitioner is entitled to no relief. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent "ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child."

---

[4]The father's parental rights were also terminated. According to the parties, the permanency plan for the children is adoption in their current foster placement.

The circuit court correctly found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future because petitioner did not respond to a reasonable family case plan. Petitioner participated in services for nearly two years. However, the evidence shows that she was unable to exercise sufficient judgment as a parent during that time. For example, petitioner chose to enter into a relationship with D.P., despite knowing his violent criminal history. Further, petitioner's decision to intentionally hide the relationship from the DHHR is concerning because it demonstrates petitioner's willingness to place others over the best interests of her children. Additionally, petitioner failed to participate in services during the final months of the proceedings, including visitation with her children. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90, n.14, 479 S.E.2d 589, 600, n.14 (1996)(citing *Tiffany Marie S.*, 196 W. Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Although the circuit court and service providers recognized petitioner's positive change with regard to her substance abuse during these lengthy proceedings, petitioner failed to demonstrate that she could act in her children's best interests. Considering this evidence, we conclude that the circuit court did not err in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future.

Moreover, termination was necessary for the welfare of the children because petitioner could not protect her children from D.P. Despite multiple warnings from the DHHR and the circuit court, petitioner chose to pursue a relationship with D.P. Petitioner concealed that relationship instead of requesting that D.P. participate in services as requested by the DHHR. Ultimately, petitioner's youngest child suffered severe injuries while in the custody of D.P., which required a multiple-day hospital stay for recovery. Petitioner's poor judgment created an opportunity for her youngest child to be injured; this faulty judgment would continue to threaten her children if they were returned to her care. Accordingly, we find that termination was necessary for the welfare of the children.

Petitioner's argument that the circuit court abused its discretion in terminating her parental rights is without merit. Despite her assertion that she made significant progress during the proceedings, this Court has held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). The evidence provided by the DHHR sufficiently supports the circuit court's findings that petitioner was given ample time to improve, but, ultimately, failed to correct the conditions of neglect. We have also held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse

4

can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As the circuit court's findings are supported by the record below, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 14, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: March 15, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison